THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| U.S. SPECIALTY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. |
| WHITE MARLIN OPERATING COMPANY, LLC, | § § § § | |
| Defendants. | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR
INDEMNITY, EQUITABLE, AND OTHER RELIEF**

Plaintiff U.S. Specialty Insurance Company (the "**Surety**" or "**USSIC**") files its Original Complaint for Indemnity, Equitable, and Other Relief against White Marlin Operating Company, LLC ("**Indemnitor**" or "**White Marlin**") and shows:

### I. PARTIES

1. Plaintiff U.S. Specialty Insurance Company is a Texas corporation.

2. Defendant White Marlin Operating Company, LLC is a Delaware limited liability company with its principal place of business in Houston, Texas. Talco Petroleum, LLC is the sole member of White Marlin. Nigel Solida is the sole member of Talco Petroleum, LLC and is a Kansas resident. White Marlin may be served with process by serving its registered agent C T Corporation System, 1999 Bryan St., Ste. 900, Dallas Texas 75201-3136.

### II. VENUE

3. This Court possesses original jurisdiction over USSIC's claims under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the matter in controversy is between citizens of different states.

4. This Court possesses the power to declare the respective rights and other legal relations of the parties as requested herein under 28 U.S.C. § 2201(a).

5. This Court possesses the power to grant the injunctive relief requested herein under Rule 65 of the Federal Rules of Civil Procedure.

6. Venue is proper in the United States District Court for the Southern District of Texas, Houston Division, under 28 U.S.C. § 124(b)(2) and 28 U.S.C. § 1391(b)(1) because one or more of the Defendants reside in the Southern District of Texas, Houston Division, and all of the Defendants are residents/citizens of the State of Texas. Moreover, under a general agreement of indemnity, the Defendant irrevocably and unconditionally submitted to the exclusive jurisdiction of this Court, and the Defendant has waived any and all rights to object to such venue or jurisdiction.

### III.   FACTUAL BACKGROUND

A.   THE AGREEMENT OF INDEMNITY

7. On or about July 21, 2015, White Marlin executed Payment and Indemnity Agreement No. 1083 ("**Indemnity Agreement**").[1]

8. Pursuant to the Indemnity Agreement,

> The [Indemnitor] shall pay the Surety premiums and charges at the rates and at the times specified by the Surety with respect to each Bond . . . continuing until the Surety shall be discharged or released from any and all liability and responsibility under the Bonds, and all matters arising therefrom, and until the Surety receives evidence, satisfactory to the Surety, of such discharge or release.[2]

9. Indemnitor also agreed:

---

[1] Payment and Indemnity Agreement No. 1083, attached as **Exhibit A**.

[2] Exhibit A at ¶ 1.

> The [Indemnitor] shall jointly and severally indemnify and keep indemnified the Surety and hold and save it harmless from and against any and all liability, damage, loss, cost, and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which the Surety may at any time sustain or incur by reason or in consequence of having executed or procured the execution of the Bonds or in enforcing this Agreement against any [Indemnitor] or in procuring or in attempting to procure the Surety's release from liability or a settlement under any Bonds.[3]

10. Indemnitor further agreed to post collateral upon demand:

> The Surety may at any time and from time to time hereafter, in its sole and absolute discretion, require the [Indemnitor] to provide collateral, in a form and amounts acceptable to the Surety (such amounts not to exceed the aggregate penalty sum of all then-issued Bonds) to secure the [Indemnitor's] obligations to the Surety hereunder ... to cover any actual or potential liability, claim, suit, or judgment under any Bond. Immediately upon the Surety's demand therefor, each Principal shall execute such documents and take such further action as may be necessary in order to provide such collateral.[4]

11. With respect to financial information, the Indemnitor agreed to furnish access to their books and records as follows:

> Until the Surety shall have been furnished with evidence of its full, final, and complete discharge without loss from any and all Bonds, the Surety and its agents shall have free access, at any and all reasonable times to the books and records of each [Indemnitor] relevant to the obligations under this Agreement.[5]

12. Moreover, the Indemnity Agreement expressly applied to all outstanding and future Bonds:

> This Agreement shall also extend to and cover and indemnify the Surety against loss under any presently outstanding Bonds, and the obligation of the [Indemnitor] hereunder, with respect to such pre-

---

[3] Exhibit A at ¶ 2.

[4] Exhibit A at ¶ 3.

[5] Exhibit A at ¶ 4.

existing Bonds, shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of any or all of the [Indemnitors] under any presently existing agreement relating to or securing such pre-existing Bonds. Further, with respect to any future Bonds, the obligation of any or all of the Principals under any such presently existing agreement(s) shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of the [Indemnitor] hereunder.[6]

B. **BONDS ISSUED BY USSIC**

13. In reliance upon its rights under the Indemnity Agreement, USSIC, as surety, issued numerous bonds for which White Marlin is obligated to USSIC. The bonds are reclamation bonds required to ensure that necessary environmental remediation takes place after oil and gas exploration and drilling activity. The Surety's obligations under the bonds include reclamation, payment of taxes, and compliance with environmental laws and regulations.

14. The Indemnity Agreement provides that "[e]ach Principal shall be jointly and severally liable for each and every obligation and duty of the Principals set forth herein."[7] The Indemnity Agreement defines "Principal" as:

> [A]ny of the undersigned individuals or entities, as well as any and all affiliates, specifically including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures in which any of the undersigned or any wholly or partially owned subsidiary, division or affiliate has an interest or participation, whether now existing or which may hereafter be created or acquired; provided, however, and notwithstanding anything to the contrary in this Agreement, none of Parallel Resource Partners, LLC, a Delaware limited liability company ("Parallel"), any of the investment funds advised or managed by Parallel or any of the portfolio companies of the investment funds advised or managed by Parallel, other than the

---

[6] Exhibit A at ¶ 19.

[7] Exhibit A at ¶ 20.

Principals that are signatories hereto, shall be considered a "Principal" for purposes of this Agreement.[8]

15. White Marlin, by executing the Indemnity Agreement, has a contractual obligation to indemnify and hold harmless USSIC for loss on any bonds issued to White Marlin and all other Principals that executed the Indemnity Agreement.

16. USSIC, as surety, also issued bonds on behalf of Principals that executed Additional Named Principal Supplements. Signatories to the Additional Named Principal Supplements represented that they were an affiliate of one or more of the Principals signing the Indemnity Agreement, agreed that they were a Principal under the terms of the Indemnity Agreement, and explicitly joined the Indemnity Agreement and assumed all the obligations of a Principal under the Indemnity Agreement. For that reason, White Marlin is also obligated to USSIC for loss on bonds issued to all named Principals that executed the Additional Named Principal Supplements.

17. The Surety received a demand under one of the bonds (Bond No. B012260) for which White Marlin is obligated to USSIC from Mississippi Power Company.[9] Bond No. B012260 was executed effective September 6, 2019 and issued to Petro Harvester Operating Company, LLC ("Petro"). Petro executed the Additional Named Principal Supplement on September 6, 2019 which refers to the Indemnity Agreement. After reviewing the claim, the Surety made payment to Mississippi Power Company pursuant to the bond in the amount of $292,374.98.[10]

---

[8] Exhibit A at Introductory Paragraph.

[9] July 19, 2022 Letter, attached as **Exhibit D**.

[10] September 20, 2022 Letter with check, attached as **Exhibit E**.

18. Of the other bonds USSIC issued for White Marlin or other Principals that White Marline has a contractual obligation to protect USSIC from loss pursuant to the Indemnity Agreement, the following bonds remain open (collectively, the "**Bonds**"):[11]

| Principal | Bond No. | Penal Sum | Bond Form |
|---|---|---|---|
| WHITE MARLIN OPERATING COMPANY | B005114 | 2,190,000.00 | S-TX-P-5 |
| WHITE MARLIN OPERATING COMPANY | B005115 | 500,000.00 | L-TX-L&P |
| WHITE MARLIN OPERATING COMPANY | B009303 | 1,250,000.00 | S-LA-BLKT PLUGGING |
| WHITE MARLIN PETROLEUM LLC | B009482 | 1,385,213.00 | P-ON-CHEVRON |
| WHITE MARLIN OIL AND GAS COMP | B009483 | 950,000.00 | P-ON-HILCORP |
| WHITE MARLIN OPERATING COMPANY | B009490 | 100,000.00 | L-TX-L&P |
| WHITE MARLIN MIDSTREAM LLC | B011583 | 1,750,000.00 | P-ON-ARROWHEAD |
| PETRO HARVESTER OPERATING COMP | B012262 | 1,000,000.00 | P-ON-CHEVRON |
| PETRO HARVESTER OPERATING COMP | B012263 | 1,000,000.00 | P-ON-CHEVRON |
| ROCKALL LA LLC | B012265 | 14,338,000.00 | P-ON-BURLINGTON |
| | | | |
| | Total | 24,463,213.00 | |

C. **INDEMNITOR HAS FAILED AND REFUSED TO INDEMNIFY AND POST COLLATERAL UPON DEMAND**

19. The Surety issued a written demand on the Indemnitor dated September 15, 2022 for past due premiums for bonds issued for White Marlin in the amount of $697,350.86, attorneys' fees and expenses in the amount of $134,029.83 to protect the rights and interests of the Surety under the White Marlin bonds and the Indemnity Agreement, and to provide collateral security of $24,998,213 for the Bonds.[12] Despite written demand, the Indemnitor failed (a) to pay the owed premiums, (b) to reimburse the Surety for attorney fees and expenses, and (c) to indemnify and provide the requested collateral as required by the Indemnity Agreement.

---

[11] List of remaining open Bonds, attached as **Exhibit B**.

[12] September 15, 2022 Letter to Indemnitor, attached as **Exhibit C**.

20. The Surety fears that the Indemnitor may deplete assets to a point where there will not be sufficient collateral to protect the Surety and will leave the Surety exposed under the Bonds in the amount of $24,463,213.[13] This amount is the face amount of the undischarged and potential liability of the Surety under the Bonds. Without the collateral to secure the Surety from such loss, the Surety will suffer irreparable harm under the Bonds with no recourse for reimbursement from the Indemnitor.

21. The Surety seeks and is entitled to injunctive relief and specific performance of the Indemnitor's obligation to post collateral under the Indemnity Agreement.

22. The Surety requests that this Court issue a preliminary and permanent injunction compelling the Indemnitor: (a) to post collateral in the amount of $24,463,213, plus additional funds necessary to secure the expenses, court costs, and attorneys' fees expended and/or will be expended as necessary in order to enforce the Indemnity Agreement, and (b) to provide immediate access to their books, records, accounts, databases, and any and all financial records the Surety has a right to access under the Indemnity Agreements (the "**Records**"). Without injunctive relief, the Surety will suffer irreparable harm because of the likelihood of the Indemnitor dissipating assets. The disposition of assets will reduce the amount of collateral available to the Surety and prevent Indemnitor from being able to fulfill their obligations to provide collateral sufficient to protect the Surety from all undischarged liability.

---

[13] After the Surety issued its demand on September 15, 2022, two bonds issued on behalf of White Marlin were cancelled that effectively reduced the number of open bonds to the 10 listed in Paragraph 18 with a total penal limit of $24,463,213.

## IV. CLAIMS FOR RELIEF

### A. BREACH OF INDEMNITY AGREEMENT

23. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

24. Indemnitor executed the Indemnity Agreement whereby it agreed to indemnify the Surety against any liability or loss in connection with the Bonds.

25. Indemnitor has failed to make payment or otherwise indemnify the Surety for its losses under the terms of the Indemnity Agreement, which constitutes a breach of the Indemnity Agreement.

26. As a direct and proximate result of Indemnitor's breach of the Indemnity Agreement, the Surety has incurred and will continue to incur losses, costs, and expenses, including attorneys' fees and costs associated with the prosecution of this action.

27. The Surety is entitled to the entry of judgment against Indemnitor in an amount sufficient to fully indemnify and hold the Surety harmless from and against all loss under the terms of the Indemnity Agreement.

### A. COMMON LAW INDEMNITY

28. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

29. The Surety has been called upon as surety for Indemnitor's alleged defaults under the Bonds.

30. Indemnitor benefitted from the Surety's posting of the Bonds, as Indemnitor could not have performed without the Bonds.

31. Under the theories of common law indemnity, unjust enrichment, and restitution, the Surety is entitled to payment from Indemnitor for all of the Surety's loss and expense resulting from issuance of the Bonds.

**B. SPECIFIC PERFORMANCE OF COLLATERAL OBLIGATIONS OF INDEMNITOR**

32. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

33. Under Paragraph 3 of the Indemnity Agreement, the Indemnitor is obligated to deposit collateral in a form acceptable to the Surety in an amount sufficient to protect the Surety against exposure from all undischarged liability on the Bonds.

34. Pursuant to Paragraph 3 of the Indemnity Agreement, the Surety has demanded that the Indemnitor deposit collateral totaling $24,463,213 relative to the face amount of the undischarged liability of the Surety under the Bonds.

35. Despite the Surety's demand, the Indemnitor has failed and/or refused to deposit any collateral with the Surety. The failure of the Indemnitor to deposit the demanded collateral with the Surety constitutes a breach of the Indemnity Agreement.

36. If the requested relief is not granted, the Indemnitor may sell, transfer, dispose, lien, secure, or otherwise divert asserts, thereby preventing the Surety's access to those assets for discharging the Indemnitor's obligations to indemnify the Surety.

37. The Surety is therefore entitled to the entry of a judgment compelling the Indemnitor to specifically perform its duty to deposit collateral with the Surety in the minimum amount of $24,463,213.

### C. SPECIFIC PERFORMANCE OF BOND PREMIUM OBLIGATIONS OF INDEMNITOR

38. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

39. Pursuant to the Indemnity Agreement, Indemnitor is obligated to pay to the Surety premiums and charges at the rates and times specified by the Surety with respect to each Bond.

40. Under Paragraph 1 of the Indemnity Agreement, the Indemnitor is obligated to pay to the Surety premiums and charges at the rates and times specified by the Surety with respect to each Bond.

41. Pursuant to Paragraph 1 of the Indemnity Agreement, the Surety has demanded that the Indemnitor submit payment for past due bond premiums in the amount of $687,350.86.

42. Despite the Surety's demand, the Indemnitor has failed and/or refused to submit payment of the past due bond premiums to the Surety. The failure of the Indemnitor to submit payment of the past due bond premiums with the Surety constitutes a breach of the Indemnity Agreement.

43. The Surety is therefore entitled to the entry of a judgment compelling the Indemnitor to specifically perform its duty to pay bond premiums to the Surety in the minimum amount of $687,350.86.

### D. SPECIFIC PERFORMANCE OF DUTY TO FURNISH BOOKS AND RECORDS

44. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

45. Under Paragraph 4 of the Indemnity Agreement, the Indemnitor, upon demand, is obligated to furnish the Surety free access to the books and records of the Indemnitor.

46. The Surety is therefore entitled to entry of a judgment compelling the Indemnitor to specifically perform its obligation to furnish the Surety free access to their books and records.

E. **EXONERATION**

47. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

48. The Indemnitor is liable to the Surety under the Indemnity Agreement for all amounts necessary to exonerate the Surety from liability existing and/or asserted against it.

F. **COLLATERALIZATION/QUIA TIMET**

49. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

50. The Indemnitor agreed to procure the full and complete discharge of the Surety under the Bonds and/or to provide collateral in an amount of money sufficient to satisfy all undischarged and potential liability under the Bonds and any fees and expenses incurred in order to secure the compliance of the Indemnitor and the enforcement of the Indemnity Agreement.

51. The Indemnitor has refused to honor or perform its obligations under the Indemnity Agreement to provide collateral sufficient to protect the Surety, despite written demand from the Surety.

52. The Surety is entitled to receive collateral security sufficient to discharge any and all potential liability on the Bonds and all fees and expenses incurred in securing compliance with the Indemnity Agreement.

G. **MOTION FOR PRELIMINARY INJUNCTION**

53. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

54. The Surety hereby moves for a Preliminary Injunction (a) ordering the Indemnitor to deposit immediately cash collateral in the amount of $24,463,213 with the Surety and (b) ordering the Indemnitor to provide the Surety immediate access to its books and records the Surety has a right to access under Paragraph 4 of the Indemnity Agreement (collectively, the "Records"). The injunctive relief is necessary to preserve the status quo and to prevent significant, imminent, and irreparable harm to the Surety, as the Surety will suffer such harm if it does receive the protection it has a right to receive under the Indemnity Agreement in the form of cash collateral.

55. The Surety will also suffer immediate and irreparable injury if the Indemnitor is not immediately restrained from destroying and/or hiding the Records, and the Indemnitor has a contractual obligation to provide access to the Records. No harm will occur to the Indemnitor if this Court orders it to abide by its contractual obligation and provide reasonable access to the Surety.

56. The Surety will likely prevail on the merits and has no adequate remedy at law. Injunctive relief will not adversely affect the public interest, and the Surety is willing to post a bond in the amount the Court deems appropriate.

## V.  CONDITIONS PRECEDENT

57. All conditions precedent to recovery by the Surety from the Indemnitor have occurred or have been performed.

## VI.  RECOVERY OF ATTORNEYS' FEES

58. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

59. The Indemnity Agreement entitles the Surety to recover its attorneys' fees and costs arising from Indemnitor's breach of the Indemnity Agreement. The acts described in this Petition

forced the Surety to retain legal counsel pursue recovery for damages caused by Indemnitor's acts and/or omissions. Accordingly, the Surety seeks reimbursement for its reasonable and necessary attorneys' fees and costs.

60. Additionally, and alternatively, the Surety is entitled to recovery of attorneys' fees under Section 38.001 *et. seq.* of the Texas Civil Practice and Remedies Code.

## VII. INTEREST

61. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

62. The Surety is also entitled to recover prejudgment interest against Indemnitor at the highest rate allowed by law. Further, if the Surety recovers on this action, it is entitled to post-judgment interest at the highest rate allowed by law, from the date of judgment until such judgment is satisfied.

## VIII. REQUEST FOR RELIEF

For these reasons, Plaintiff U.S. Specialty Insurance Company respectfully requests that Indemnitor be cited to appear and answer herein; and that the Surety be granted judgment against Indemnitor for the following:

(a) Judgment against in the Indemnitor for $292,374.98, which is the amount of loss incurred by the Surety under Bond No. B012260;

(b) Judgment compelling the Indemnitor to specifically perform its obligation to deposit collateral with the Surety in the amount of $24,463,213, which is the amount sufficient to protect the Surety against exposure from all undischarged liability on the Bonds;

(c) Judgment compelling the Indemnitor to specifically perform its obligation to pay to the Surety Bond Premiums in the amount of $687,350.86, which is the amount of past due Bond Premiums at the time of this filing;

(d) Judgment compelling the Indemnitor to specifically perform its duty to furnish the Surety free access to its books and records;

(e) Preliminary injunction and permanent injunction for the following relief: (i) that the Indemnitor be required to specifically perform its obligation to deposit cash collateral with the Surety in the amount of $24,463,213; and (ii) that the Indemnitor provide the Surety with immediate access to the Records;

(f) Judgment against Indemnitor for the Surety's reasonable attorneys' fees and expenses incurred by the Surety to protect/pursue its rights and interest under White Marlin bonds and the Indemnity Agreement;

(g) Judgment against Indemnitor for all costs of court;

(h) Judgment against Indemnitor for prejudgment and post judgment interest at the highest rate allowed by law; and

(i) For such further relief, both general and specific, as may be deemed appropriate by this Court.

DATED: December 9, 2022.

Respectfully Submitted,

*/s/ Gregory M. Weinstein*
GREGORY M. WEINSTEIN
State Bar No. 16027020
CHRIS VALENTINE
State Bar No. 24104313
**WEINSTEIN RADCLIFF PIPKIN LLP**
8350 N. Central Expressway, Suite 1550
Dallas, Texas 75206
Telephone: 214.865.6126
Facsimile: 214.865.6140
Email: gweinstein@weinrad.com
cvalentine@weinrad.com

**ATTORNEYS FOR PLAINTIFF U.S. SPECIALTY INSURANCE COMPANY**